HYMAN KUPFERSMITH, DEFENDANT IN ERROR, v. LAW, UNION AND CROWN INSURANCE COMPANY, PLAINT-IFF IN ERROR.

Argued June 24, 1910—Decided November 14, 1910.

Where the object of a self-serving declaration is to show a previous state of mind of the declarant, inconsistent with, and hence tending to rebut, an alleged previous course of conduct, which, if proved in the litigation, would be injurious to the party making the statement, such declaration in order to be competent evidence must be made at a time so near to the occurrence which gave rise to it, and under such circumstances, as to exclude the idea that it was premeditated or uttered after deliberation or reflection.

On error to the Supreme Court.

For the plaintiff in error, *Condict, Condict & Boardman.*

For the defendant in error, *Clarence Kelsey.*

The opinion of the court was delivered by

VOORHEES, J. This action was instituted in the Supreme Court to recover indemnity upon a policy of fire insurance. A judgment was rendered for the plaintiff upon the verdict of a jury, for the sum admitted upon the trial of the cause to be due, if any amount were recoverable. The assignments of error bring to the test questions which arise upon the admission and rejection of evidence.

The principal case of the plaintiff was brief, and upon it the plaintiff himself was not sworn as a witness. It consisted of an offer of the policy sued upon, certain letters from the defendant company to the plaintiff; and from the defendant company to its local agent; an arbitration agreement between the parties dated the 10th of December, 1908; an admission that the loss under the policy had not been paid; that the fire occurred October 15th, 1908; that the proportionate amount of the policy was $329.51; that the local agent had

reported the loss, but had merely stated to the company that the cause of the fire was unknown and did not communicate what the rumors were about the fire; that the plaintiff had called upon the local agent after submitting an appraisal made by him and one Roseman, in which the damages had been fixed at over five thousand dollars, to ascertain why the company had not paid the loss and had been told by the agent that he would write to the company and endeavor to ascertain the cause, to which inquiry the company had replied to its agent by requesting him to notify the plaintiff to call upon Mr. Greer, at the adjustment bureau, who would explain the situation. Plaintiff's case was then rested.

The principal defence was arson, in the course of which one witness testified that on the morning after the fire the plaintiff on a public street had said to him: "This is the man who has got to know something about my fire. You got to tell me who made that fire." To which the witness replied: "Kupfersmith, don't bother me. Don't press that on me, because if I am going to be asked, I have got to tell the truth," and that the plaintiff then said: "You would dare tell that I made the fire? Then you go to jail, because I got witnesses to prove the thing and you got to go to jail." The witness who so testified had before stated that he had recognized the plaintiff and another man about eight-thirty on the evening of the fire, which was discovered by the witness very shortly after, and that on that occasion, when the witness made a noise, the plaintiff and his companion had run away.

A witness was then produced by the plaintiff in rebuttal, who testified that he had heard a conversation between the plaintiff and the former witness on the street on the morning after the fire, but who put an entirely different version upon it; otherwise the defendant's witness was not contradicted.

The plaintiff was sworn in his own behalf on rebuttal, and it was developed upon his examination that the appraisement of $5,100 had been sworn to and signed by him and sent to his adjuster in New York, and thence to the defendant; that subsequently the plaintiff had received a letter dated November 9th, 1908, from the defendant's manager, addressed to his

attorneys, stating that he did not know why the loss had not been adjusted; that the matter had been placed in the hands of the general adjustment bureau in New York, and he was awaiting their report; that after that, the plaintiff called at the adjustment bureau, pursuant to the letter from the manager, and there met one Garrison, the general adjuster of the defendant. Then this question was asked of the plaintiff:

"*Q.* Was there anything said about the company having the building repaired—repairing the building on that occasion?

"*A.* He asked me how much I got damages. I says to him the damages is $5,100. Mr. Roseman made it. He says, 'I don't think so.' I said, 'I don't want the money of you. You can have the money, you repair the building in the same condition it was, I am satisfied I can lose my rent. I don't want this, only the building back.'"

A motion was then made to strike out the testimony on the ground that it was a self-serving declaration and not admissible on behalf of the plaintiff. The plaintiff did not remember the date when this conversation occurred, but asserted that his visit to the adjuster was in compliance with the letter above mentioned. Hence it would appear that the conversation took place after November 9th, the date of the letter. The evidence was offered to rebut the defence of arson.

The words used by the plaintiff, to have the force thus sought to be attributed to them, must relate to a past transaction, that is to the demand of the amount claimed by him in his appraisal, as the *quantum* of loss, and to repel any deduction therefrom or to be gathered from the defendant's case, that he had criminally fired his own building and yet was willing to have it restored to its former condition and forego the receipt of any money.

In short, the desired effect of the plaintiff's declaration must have been to exhibit his state of mind, existing at a time when he put in his appraisement for his loss, and, perhaps, even anterior to that date. It is not perceived how his pre-existing mental attitude would be shown by a statement first made some three weeks after the event.

But passing this objection, the evidence was self-serving, and therefore incompetent, unless relevant for some other reason. It is clear that evidence of the willingness of the plaintiff to have the property repaired was irrelevant, if for no other reason, because the amount of recovery had already been fixed by consent of the parties, leaving the sole question in dispute whether any recovery could be had. Was it relevant to exhibit the plaintiff's state of mind for the purpose of rebutting an inference of arson? Such a declaration is said to be competent when a part of the *res gestæ.*

There are certain marks and circumstances which must attend such statements, else they cannot be classed as forming part of the *res gestæ.*

Among those *indicia* are these, that the declaration must have been made when the witness could have no reasonable motive to utter it for his own interest, and at a period not remote enough to allow time for premeditation.

Such declarations must be spontaneous, impulsive, and have been made during or shortly after the time of the occurrence which has inspired them, so as to preclude the idea of deliberate design. This is the rule laid down in *Greenl. Evid.* (16th ed., edited by Prof. *Wigmore*), at § 162, *f* and *g*, where the learned editor adds:

"It is therefore properly a question to be determined anew in each case whether the circumstances were such that the statement could be regarded as of the spontaneous nature intended by the above phrasings."

See, also, *Wigm. Ev.*, §§ 1139, 1747 to 1750, where the subject is fully discussed by this distinguished author. The case of *Hunter* v. *State,* 11 *Vroom* 495 (at *p. 536 et seq.*), contains a lucid examination of the subject. The facts developed at the trial, as recounted in the former part of this opinion, quite clearly demonstrate that the statement was made, not only nearly or quite four weeks after the fire, but after the plaintiff apparently had reason to fear that he was under suspicion, as the author of the fire; and after rumors to that effect had been in circulation; after the delay of the company to pay the loss demanded might reasonably have augmented

that fear; and after he had had ample time to reflect that his claim, if excessive, would bear strongly against his innocence, and to foresee that the expression of a desire to have the company repair might modify the ill effect of an exorbitant demand as well as tend to allay suspicion of any complicity in setting the fire.

Where the object of a self-serving declaration is to show a previous state of mind of the declarant, inconsistent with and hence tending to rebut an alleged previous course of conduct, which, if proved in the litigation, would be injurious to the party making the statement, such declaration, in order to be competent evidence, must be made at a time so near to the occurrence which gave rise to it, and under such circumstances, as to exclude the idea that it was premeditated or uttered after deliberation or reflection.

The rulings of the court permitting the introduction of this evidence and the refusal to strike it out constituted error. Nor were they rendered harmless because of the subsequent agreement of the parties to submit the damages to arbitration. The policy, as well as the agreement, stipulate that the appraisal shall not be held to have waived any provision or condition of the policy or any forfeiture thereof.

The remaining assignment of error has been examined and found to be without merit. The judgment will be reversed to the end that a *venire do novo* may be awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, DILL, CONGDON, JJ. 13.